J. S83010/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JOSEPH MIN, | : | No. 29 WDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the Order, December 10, 2015,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0001894-2013

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED APRIL 12, 2017**

Joseph Min appeals from the order of December 10, 2015.  Appellant was resentenced following the filing of a timely PCRA[1] petition challenging the legality of his sentence and also raising several claims of trial counsel ineffectiveness.  The trial court agreed to resentence appellant but denied PCRA relief in all other respects.  After careful review, we affirm the trial court's disposition of appellant's ineffectiveness claims, but vacate the judgment of sentence and remand for resentencing.

Following a jury trial held January 27-31, 2014, before the Honorable Donna Jo McDaniel, appellant was found guilty of multiple sexual offenses

---

* Retired Senior Judge assigned to the Superior Court.

[1] Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.

including three counts of involuntary deviate sexual intercourse ("IDSI") -- person under 16 years of age, unlawful contact with a minor, aggravated indecent assault, statutory sexual assault, indecent exposure, corruption of minors, and indecent assault.[2] The charges related to appellant's ongoing sexual relationship with the victim, S.E., in 2006 and 2007 when the victim was 14 and 15 years old. At the time, appellant was 28 and 29 years old. Appellant was represented by the public defender's office at trial.

Prior to sentencing, appellant retained new counsel, David S. Shrager, Esq. On May 1, 2014, appellant received an aggregate sentence of 25 to 55 years' imprisonment. Appellant was also found to meet the statutory criteria for sexually violent predator ("SVP") status. No post-sentence motions were filed; however, appellant filed a timely direct appeal.

Attorney Shrager passed away suddenly during the pendency of appellant's appeal. New counsel, Samir Sarna, Esq., was retained to represent appellant. Attorney Sarna determined that any issues of possible merit were not properly preserved at trial by motion or objection, and advised appellant to discontinue his direct appeal and file a PCRA petition. On January 8, 2015, appellant's appeal was discontinued. *Commonwealth v. Min*, No. 886 WDA 2014 (Pa.Super. filed Jan. 8, 2015).

---

[2] 18 Pa.C.S.A. §§ 3123(a)(7), 6318(1), 3125(a)(8), 3122.1, 3127, 6301(a)(1), & 3126(a)(8), respectively.

A timely, counseled PCRA petition was filed by Attorney Sarna on appellant's behalf on May 11, 2015. Appellant alleged, *inter alia*, that his sentence was illegal because the maximum was more than twice the minimum in violation of 42 Pa.C.S.A. § 9718.2(b).[3] Appellant also raised various claims of trial counsel ineffectiveness. In its answer, the Commonwealth agreed that appellant's sentence was illegal but argued that his ineffectiveness claims were without merit.

On December 10, 2015, a PCRA hearing was held before Judge McDaniel, at which trial counsel, David O'Bara, Esq., testified. Following the hearing, appellant was resentenced to an aggregate of 25 to 50 years' imprisonment.[4] Appellant's petition was denied in all other respects. A timely notice of appeal was filed on January 5, 2016. On

---

[3] As discussed further *infra*, 42 Pa.C.S.A. § 9718.2, "Sentences for sexual offenders," provides for a 25-year mandatory minimum sentence for repeat sex offenders. Section 9718.2(b) provides,

> **(b) Mandatory maximum.--**An offender sentenced to a mandatory minimum sentence under this section shall be sentenced to a maximum sentence equal to twice the mandatory minimum sentence, notwithstanding 18 Pa.C.S. § 1103 (relating to sentence of imprisonment for felony) or any other provision of this title or other statute to the contrary.

[4] Appellant received consecutive sentences on each count of IDSI as follows: count 1, 10 to 20 years; count 2, 10 to 20 years; and count 3, 5 to 10 years. Appellant received a determination of guilty without further penalty on the remaining charges. (Docket #26.)

January 13, 2016, appellant was ordered to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on or before March 9, 2016. Appellant filed a Rule 1925(b) statement on March 7, 2016; and on June 9, 2016, the trial court filed a Rule 1925(a) opinion.

Appellant has raised the following issues for this court's review:

I.      Is petitioner's claim for relief properly cognizable under the [PCRA]?

II.     Did the lower court err in dismissing the PCRA petition where trial counsel was ineffective for failing to request a jury instruction that Jessie Padjune's testimony regarding what the alleged victim told her about [appellant], was admitted for a limited purpose, and that her testimony was not to be considered as substantive evidence against [appellant]; and appellate counsel was ineffective for not preserving this issue in post-trial motions and for not raising it on appeal?

III.    Did the lower court err in dismissing the PCRA petition where trial counsel was ineffective for not filing a motion *in limine* to preclude the testimony of Justin Smith, and/or not objecting to the admission of this testimony, on the grounds that it was not relevant or probative and prejudiced [appellant]?

IV.     Did the lower court err in dismissing the PCRA petition where trial counsel was ineffective for eliciting testimony regarding [appellant]'s illegal drug use, and for failing to submit a motion *in limine*, object to and move for a mistrial, or at least request a limiting instruction on [appellant]'s illegal drug use?

V.      Did the lower court err in dismissing the PCRA petition where trial counsel was ineffective for submitting photographs of [appellant]'s

- 4 -

genitalia insofar as the pictures were offensive and served only to inflame the jury, and counsel could have presented evidence of the unique characteristics of the genitalia by other non-offensive means?

VI.    Did the lower court err in dismissing the PCRA petition where counsel was ineffective for not filing a post[-]sentence motion contending that the court abused its discretion in imposing an aggregate sentence of 25 to 55 years['] imprisonment, which exceeded the mandatory maximum sentence, insofar as the court failed to state any reasons for exceeding the mandatory term, which sentence was excessive, based on the alleged circumstances of the crimes, and the fact that the age of the alleged victim, consideration for the protection of society, and [appellant]'s history and background have already been accounted for by the application of Sections 9718.2 and 9795.1 requiring lifetime registration?

Appellant's brief at 5-6 (capitalization deleted).

"When reviewing an order [granting or] denying PCRA relief, we must determine whether the PCRA court's determination is supported by the record and is free from legal error." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004) (citation omitted).

To prevail on a claim that counsel was constitutionally ineffective, the appellant must overcome the presumption of competence by showing that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different.  A failure to

> satisfy any prong of the test for ineffectiveness will require rejection of the claim.

***Commonwealth v. Malloy***, 856 A.2d 767, 781 (Pa. 2004) (citations omitted). "We presume counsel is effective and place upon Appellant the burden of proving otherwise. Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Poplawski***, 852 A.2d at 327 (citations omitted).

In his first substantive claim on appeal, appellant argues that trial counsel was ineffective for failing to request a limiting instruction regarding Jessie Padjune's ("Padjune") testimony.[5] Padjune, S.E.'s best friend, testified regarding statements made by S.E. concerning the nature of her relationship with appellant. The relevant portion of Padjune's testimony is as follows:

> Q. Now, outside of seeing things like sitting on his lap, kissing him, that type of thing, did they ever talk about a romantic relationship?
>
> A. Yes.
>
> Q. And what sorts of things did they say?
>
> A. Because [S.E.] was my best friend and I didn't have any sexual relationship I was always

---

[5] Appellant also claims that Attorney Shrager was ineffective for not raising this issue in post-trial motions or on appeal. However, if Attorney O'Bara never requested a limiting instruction, then obviously the issue would be considered waived for purposes of post-trial motions or on appeal. **See** Pa.R.A.P. 2119(e) (statement of place of raising or preservation of issues); Pa.R.A.P. 302(a) (issues not raised in the lower court are waived and cannot be raised for the first time on appeal). Therefore, we will simply address it as a claim of trial counsel ineffectiveness.

worried that something was going on. And I would ask her, "So how is it between you two, is there any abuse going on," just because I was pessimistic. And I just wanted to make sure she was okay. And she would tell me when they had different steps in their relationship, when they started messing around, and stuff like that. So I knew that they had a sexual relationship.

MR. O[']BARA: I am going to object. Hearsay.

THE COURT: I will sustain.

[ADA PHILLIP] HONG-BARCO: Very well.

THE COURT: Actually, I am going to reverse myself and overrule.

MR. HONG-BARCO: Thank you.

BY MR. HONG-BARCO:

Q. You may continue.

A. She would talk to me about it, and a lot of the times she would talk to me about different stages in the relationship. He was also in the car when we were driving around because they were very open about their relationship with me and some of my other friends.

Q. Let me stop you, before we go to the car were these statements the basis for why you thought there were romantic things going on? Did it form part of the basis?

A. Part of it.

Q. So can you continue with -- you mentioned something that happened in a car, can you continue with that, please.

A.	We would just drive around, and they would talk about things that they had experimented with because I was a virgin and I didn't know anything was going on with my life so they would tell me what was going on with theirs.

Q.	Are these the types of things, experimenting, so to speak, when you were a teenager that you might talk about with other girl friends, too?

A.	A couple, just like the ones in the main group, like Kristin or Destiny.

Q.	What specifically was said?

A.	They would just say like if they had started --

Q.	I am sorry -- okay.  When you say they you are talking about the defendant and [S.E.]?  Okay.  Go ahead.

A.	Yes, that they would start touching each other or having oral sex.

MR. O[']BARA:  Again, I am going to object.  These are things that are being said by someone else, and they are being offered --

THE COURT:  These are things that were alleged to have been said by the victim and by the defendant.

MR. HONG-BARCO:  That's right.

THE COURT:  Let's be specific to who is saying what.

MR. HONG-BARCO:  Very well.

BY MR. HONG-BARCO:

Q.	Why don't we limit it to things that the defendant said relating to these sex acts.

A. Okay. Usually it was just the victim, but the defendant was in the car. There were --

Q. I'm sorry, did he ever refute any of that?

A. No.

Q. Now, you recall the things that came out of his mouth?

A. A few different times he would talk about porn and different things that happened at his apartment between them. Also there was one time where he said that me or my friend Kristin would be his two options if we were ever to have a threesome with someone.

Q. I am sorry, you, Kristin and who?

A. [S.E.].

Q. Okay. So you and Kristin would be the options for his threesome?

A. With [S.E.].

Q. And you or Kristin?

A. Yes.

Notes of testimony, 1/27-31/14 at 140-143.

Appellant argues that Attorney O'Bara was ineffective for not requesting a limiting instruction that S.E.'s statements to Padjune were only admissible as prior consistent statements under Pa.R.E. 613(c) and not as

substantive evidence of appellant's guilt.[6]   On cross-examination, S.E. admitted that in 2008, when appellant started coming around less frequently, she became resentful and angry.  (**Id.** at 127.)   S.E. also testified that she and appellant finally broke up when she discovered he was cheating on her with his current wife, Brandy.  (**Id.** at 53, 126.)  She found text messages from Brandy on his phone asking for sex after a narcotics anonymous meeting.  (**Id.** at 53.)   The relationship did not end on good terms, and eventually S.E. told appellant not to come around her or her family anymore.  (**Id.** at 54.)

---

[6]   **(c)  Witness's Prior Consistent Statement to Rehabilitate.**  Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of: (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(c).   "[A] prior consistent statement is always received for rehabilitation purposes only and not as substantive evidence." **Commonwealth v. Busanet**, 54 A.3d 35, 67 (Pa. 2012), quoting **Commonwealth v. Baumhammers**, 960 A.2d 59, 89 (Pa. 2008), citing Pa.R.E. 613, Comment.

Therefore, because S.E.'s credibility was attacked by defense counsel, appellant theorizes that Padjune's testimony could have been admissible as prior consistent statements of the victim. However, Judge McDaniel never stated why she reversed herself and overruled Attorney O'Bara's hearsay objection. There was no discussion of Rule 613(c) on the record. Padjune's testimony was not expressly admitted for purposes of rehabilitating the witness under Rule 613(c), so there was no reason for Attorney O'Bara to ask for a limiting instruction on those grounds.

Attorney O'Bara's first objection was overruled; the second time, the trial court instructed the Commonwealth to "be specific to who is saying what." (*Id.* at 142.) ADA Hong-Barco then told Padjune to limit her testimony to statements made by appellant. (*Id.*) Appellant's statements are admissible under Pa.R.E. 803 as admissions by a party opponent. In addition, Padjune testified that appellant was present when S.E. made these incriminating statements and did not refute them. (*Id.* at 141-143.) We determine that the underlying issue lacks arguable merit and Attorney O'Bara was not ineffective for failing to request a limiting instruction.

Next, appellant argues that Attorney O'Bara was ineffective for failing to object to Justin Smith's ("Smith") testimony on the grounds that it was irrelevant and prejudicial. Smith, Padjune's fiancé, testified that appellant and S.E. had a sexual relationship. However, appellant argues that Smith's

testimony was irrelevant because it related to the time period after S.E. turned 16 years old.

> Relevant evidence is that which, either taken alone or in connection with other evidence, tends to prove or disprove some material issue in the case. Stated another way, to establish relevancy we ask whether the evidence sheds light upon or advances the inquiry in which the fact-finder is involved. If the evidence in question is logically relevant it is admissible unless the trial court, in its discretion, determines that its potential prejudicial impact outweighs its probative value.

*Commonwealth v. Brown*, 911 A.2d 576, 584 (Pa.Super. 2006), *appeal denied*, 920 A.2d 830 (Pa. 2007) (citation omitted).

Smith testified that when he first met Padjune and S.E. in April 2009, they were both 16 years old. (*Id.* at 157.) Smith was 20 years old at the time. (*Id.*) Smith also met appellant, who they called "Asian Joe" and referred to as S.E.'s boyfriend. (*Id.* at 158.) Smith testified that appellant and S.E. would hug and kiss each other, and tell each other "I love you." (*Id.* at 161-162.) Smith also testified that at one point appellant and S.E. broke up. (*Id.* at 160.) Appellant subsequently approached Smith and Padjune and confessed that he still had feelings for S.E. and wanted to get back together. (*Id.*)

The jury could fairly infer from Smith's testimony that appellant and S.E. had a pre-existing relationship, that they had not just begun dating. In addition, appellant vehemently denied any sort of sexual or romantic relationship with S.E. whatsoever, at any time. (*Id.* at 174, 214-216.)

Therefore, the testimony went to credibility. We also note that appellant was charged with corruption of minors, which includes children under the age of 18 years. Smith's testimony was relevant and admissible, and Attorney O'Bara cannot be found ineffective on this basis.

Next, appellant argues that Attorney O'Bara was ineffective for eliciting testimony regarding appellant's illegal drug use and/or failing to request a cautionary instruction. According to appellant, this constituted inadmissible "other crimes" evidence and was highly prejudicial. We disagree.

As a general rule, a defendant's prior bad acts, including convictions, are not admissible to prove criminal propensity or bad character. *Commonwealth v. Paddy*, 800 A.2d 294, 307 (Pa. 2002). However, such evidence will be allowed where the other crime or bad act "was part of a chain or sequence of events which formed the history of the case and was part of its natural development." *Commonwealth v. Stiffler*, 657 A.2d 973, 976-977 (Pa.Super. 1995) (citations omitted). *See Commonwealth v. Burton*, 770 A.2d 771, 778 (Pa.Super. 2001), *appeal denied*, 868 A.2d 1197 (Pa. 2005), *overruled on other grounds by Commonwealth v. Mouzon*, 812 A.2d 617 (Pa. 2002) (evidence of other crimes, wrongs, or bad acts is admissible where they were part of a chain or sequence of events which formed the history of the case and were part of its natural development, also known as the "complete story" rationale (citations omitted)).

Appellant's past drug use was relevant and formed part of the natural development of the facts of the case because he met S.E.'s mother in drug treatment. (Notes of testimony, 1/27-31/14 at 35.) S.E. testified that her mother met appellant through a mutual friend, Robert Brown ("Brown"). (*Id.*) They were all receiving treatment for drug and alcohol addiction. (*Id.*) Brown and appellant were living together at a halfway house called the "Cash Club" in McKees Rocks, which stands for the Clean And Sober Association. (*Id.* at 35, 200.) S.E. testified that she would often attend their meetings and spend time at the Cash Club playing pool. (*Id.* at 37.)[7] This information was important to establish how the relationship between S.E. and appellant began. As Attorney O'Bara explained at the PCRA hearing:

> I didn't make objections because I really -- I didn't see how that could have been omitted. When [S.E.] testified on direct examination she described how she knew [appellant]. It became -- the information was elicited that he was friends with her mother, and they met at the drug rehabilitation facility. So in addition to it being brought out immediately as part of the direct examination of [S.E.], [appellant] chose to testify as well. That was a significant portion of his narrative. I mean it established how, in fact, he knew the family. I did not -- to answer your question, I did not object to it being raised because I don't really see in what capacity it could have been objected to. It was pretty fundamental to their entire story.

---

[7] S.E. herself did not use any drugs or alcohol. (*Id.* at 100-101.)

Q. So it's your position that the testimony regarding the illegal drug use would have been relevant to the trial?

A. It's not relevant to the dispositive issue as to what the nature of their relationship was. The dispositive issue in that case was, what is the nature of their relationship? Is it sexual or not sexual? I don't see how it could have been removed from the narrative.

Notes of testimony, 12/10/15 at 8-9.

We agree. Clearly, appellant's drug addiction was admissible to explain how he met S.E. and her family. Attorney O'Bara would have had no basis to object to this testimony. *See Commonwealth v. Molina*, 897 A.2d 1190 (Pa.Super. 2006), *appeal denied*, 903 A.2d 1233 (Pa. 2006) (finding trial counsel was not ineffective in failing to object to the prosecutor's questioning of the victim and the appellant regarding the appellant's illegal immigration status since such evidence was part of a chain or sequence of events and not unduly prejudicial). Indeed, as the Commonwealth points out, it was in appellant's best interest to explain to the jury how he came to know a 14-year-old girl. (Commonwealth's brief at 30.)

In addition, the testimony that appellant was a recovering addict was not particularly prejudicial where there was no evidence that appellant was ever convicted of any drug crimes and he had not relapsed. Even S.E. testified that appellant was clean and sober. (Notes of testimony, 1/27-31/14 at 39-40.) In fact, S.E. testified that one reason appellant

stopped coming around was because her mother relapsed. (*Id.* at 125-126.) This claim fails.

Next, appellant contends that Attorney O'Bara rendered ineffective assistance by submitting photographs of appellant's genitalia. S.E. testified on cross-examination that appellant did not have anything out of the ordinary about his genitalia. (*Id.* at 128.) Appellant did have a tattoo of an Egyptian Eye of Horus on his waist area, in proximity to his genitalia. (*Id.* at 63-64, 128.) However, to S.E.'s knowledge, there were no distinguishing marks on appellant's genitals. (*Id.* at 128.)

Appellant testified that his genitals are discolored. (*Id.* at 226.) Specifically, appellant testified that there is a large black and blue mark on the bottom portion of his genitalia. (*Id.*) According to appellant, he has had this condition since birth. (*Id.*) Attorney O'Bara confirmed to the trial court that he personally viewed appellant's genitalia that morning and there was, in fact, a discoloration. (*Id.* at 225.) Attorney O'Bara also offered two photographs into evidence which the trial court initially refused to allow as offensive. (*Id.*) However, following appellant's testimony the trial court agreed to allow them into evidence:

> (The following is a sidebar discussion.)
>
> MR. O'BARA: Before closing the defense's case I would like to officially put on the record an objection to the ruling as to inadmissibility of the photos of [appellant]'s genitalia. First off, I can probably authenticate the photographs; secondly, I would argue they are a piece of evidence, while graphic in

nature, that can substantially rebut the testimony of [S.E.].

MR. HONG-BARCO: There is nothing to authenticate that those markings were on the man's penis seven years ago.

THE COURT: You know what, you can all stand up and stretch.

MR. HONG-BARCO: I have no objection to them seeing the photos. I really don't. However, I would like the photos to be dated.

THE COURT: They are what they are. If you don't have any objection we will admit them as Defense B and C.

MR. HONG-BARCO: May I see them?

MR. O'BARA: Sure.

. . . .

THE COURT: And I just put -- I have tried to put it on the verdict slip. Okay. That being said, I will tell the jury we are admitting the two photographs.

MR. O'BARA: Do you want me to authenticate them through [appellant]?

THE COURT: It's okay.

MR. HONG-BARCO: Is there a date on the back?

THE COURT: Let's just take Mr. O'Bara's word for it. Okay.

MR. HONG-BARCO: That is fine.

(Sidebar concluded.)

THE COURT: Ladies and gentlemen of the jury, at Mr. O'Bara's request we are going to mark two

> photographs as Defendant's B and C. They are photographs of the defendant's penis. They will both be admitted and be available to you in your deliberations.

Notes of testimony, 1/27-31/14 at 241-243.

At the PCRA hearing, Attorney O'Bara testified that appellant was adamant that the photographs be admitted into evidence:

> I did not want to submit that photograph to the jury. [Appellant] was pretty insistent about that. He had indicated to me, in preparation for the trial, that his genitalia had a deformity. I had one of my investigators Paul Catania meet with [appellant] and take photographs of his genitalia. I, of course, then had the opportunity to review those photographs. I would not describe the photographs as being a deformity. There was a slight bluish discoloration under [appellant]'s scrotum sac, but aside from that, I didn't find him to be deformed. [Appellant], well, he believed that this was going to be a definitive issue in the case. We discussed it. And he believed that if, in fact, on cross-examination [S.E.] made statements to the effect that there was nothing out of the ordinary or extraordinary about his genitalia -- which she did say on cross-examination -- that the photographs would disprove that statement, that the photographs would impeach her credibility on that issue and buttress our theory of the case that the incident never occurred. I would have preferred not to introduce those photographs. I thought they had the potential effect of disgusting the jury, to be quite honest with you. And as I said, I didn't think there was anything extraordinarily deformity [sic] about the photographs. But nonetheless, he felt it was a very significant issue in his defense.

Q. So prior to the trial you and [appellant] had [the] opportunity to meet and discuss what evidence you would be including on your case in chief?

A. We did.

Q. And it's your testimony today that part of that discussion entailed these photographs?

A. Yes.

Notes of testimony, 12/10/15 at 9-10.

When a defendant makes a knowing, intelligent, and voluntary choice concerning trial strategy, his later claim that trial counsel was ineffective on this basis lacks arguable merit. *Commonwealth v. Rios*, 920 A.2d 790, 803 (Pa. 2007), *abrogated on other grounds by Commonwealth v. Tharp*, 101 A.3d 736 (Pa. 2014), citing *Commonwealth v. Paddy*, 800 A.2d 294, 315-316 (Pa. 2002) (where the trial court conducted a colloquy during which the defendant confirmed that he knew he had a right to call witnesses and agreed with his counsel's decision not to call them, defendant could not later assert that trial counsel was ineffective). *Paddy* recognized that, "[t]o hold otherwise would allow a defendant to build into his case a ready-made ineffectiveness claim to be raised in the event of an adverse verdict." *Paddy*, 800 A.2d at 316.

Attorney O'Bara testified that appellant insisted on submitting the photographs of his genitalia. The trial court credited this testimony and found it to be "completely credible." (Trial court opinion, 6/9/16 at 15.)

Appellant's decision was made after full consultation with counsel, and he will not be heard to complain about it now. **Paddy**. Furthermore, there was a reasonable strategic basis for admission of the photographs into evidence. S.E. did testify that after a three-year sexual relationship including oral, anal, and vaginal intercourse, she did not notice anything unusual or distinctive about appellant's genitalia. (Notes of testimony, 1/27-31/14 at 127-129.) Therefore, it was a reasonable strategy to attack S.E.'s credibility with the photographs depicting a large bluish discoloration along the underside of appellant's penis and scrotum. "If a reasonable basis exists for the particular course, the inquiry ends and counsel's performance is deemed constitutionally effective." **Commonwealth v. Abdul-Salaam**, 808 A.2d 558, 561 (Pa. 2001), citing **Commonwealth v. Derk**, 719 A.2d 262, 266 (Pa. 1998) (opinion in support of affirmance). It cannot be said that counsel's strategy was inherently unreasonable, and the fact that the strategy did not result in an acquittal in this particular case does not make it unreasonable. As in many cases involving alleged sexual offenses, this case boiled down to credibility. There was no physical evidence and no third-party eyewitnesses to the alleged sexual acts. We will not second-guess Attorney O'Bara's strategy in this regard.

Finally, appellant alleges that trial counsel was ineffective for failing to file a post-sentence motion challenging the discretionary aspects of his

sentence.[8]  (Appellant's brief at 40.)   According to appellant, his original sentence of 25 to 55 years' imprisonment was manifestly excessive and unreasonable where the trial court focused solely on the serious nature of the offenses, to the exclusion of other relevant factors including appellant's need for rehabilitation.  (*Id.* at 38.)  Appellant also alleges that the trial court ignored certain mitigating factors including that at the time of sentencing, appellant was married and gainfully employed, had remained clean and sober, and had not been charged with any additional offenses. (*Id.*)

As set forth above, the trial court vacated appellant's original sentence and imposed a new sentence of 25 to 50 years' imprisonment.  The record further reflects that appellant received a mandatory minimum sentence of

---

[8] Appointed counsel, Attorney O'Bara, was removed from the case shortly after trial and appellant retained new counsel, Attorney Shrager.  (Notes of testimony, 12/10/15 at 11.)  Appellant was represented by Attorney Shrager at sentencing on May 1, 2014.  Attorney Shrager did not file post-sentence motions on appellant's behalf, but did file a timely direct appeal which was later withdrawn.   As stated above, Attorney Shrager died during the pendency of appellant's appeal and, therefore, was not available to testify at the PCRA hearing.

25 years' imprisonment pursuant to 42 Pa.C.S.A. § 9718.2.[9] (**See** "Notification of Commonwealth's Intention to Proceed Pursuant to the Mandatory Sentencing Provisions of 42 Pa.C.S.A. §§ 9718 and 9718.2," filed 2/3/14 (Docket #5); notes of testimony, sentencing, 5/1/14 at 24.) Therefore, counsel could not have challenged the discretionary aspects of appellant's sentence.

As the Commonwealth observes, however, 42 Pa.C.S.A. § 9718, providing for mandatory minimum sentences for certain enumerated offenses committed against children, has been declared unconstitutional and illegal in light of **Alleyne v. United States**, ___ U.S. ___, 133 S.Ct. 2151,

---

[9]

**(a) Mandatory sentence.--**

> (1) Any person who is convicted in any court of this Commonwealth of an offense set forth in section 9799.14 (relating to sexual offenses and tier system) shall, if at the time of the commission of the current offense the person had previously been convicted of an offense set forth in section 9799.14 or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction, be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary.

42 Pa.C.S.A. § 9718.2(a)(1). Appellant was previously convicted of statutory sexual assault, 18 Pa.C.S.A. § 3122.1, on April 11, 2005. (Docket #5, Exhibit A.)

186 L.Ed.2d 314 (2013) (holding that facts that increase mandatory minimum sentences must be submitted to the jury and must be found beyond a reasonable doubt). In **Commonwealth v. Wolfe**, 106 A.3d 800 (Pa.Super. 2014), **affirmed**, 140 A.3d 651 (Pa. 2016), this court determined that Section 9718 was facially void. It is true that Section 9718.2 is based on a defendant's prior conviction of sexual offenses and does not require any judicial fact-finding by the trial court. **See Apprendi v. New Jersey**, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). However, as does Section 9718, Section 9718.2 contains a provision that the statute's applicability shall be determined by the trial court, at time of sentencing, by a preponderance of the evidence. 42 Pa.C.S.A. § 9718.2(c).

In **Commonwealth v. Pennybaker**, 121 A.3d 530 (Pa.Super. 2015), this court examined 42 Pa.C.S.A. § 9718.4, providing for mandatory sentences for failure to comply with sexual offender registration requirements. Relying on **Apprendi** and **Almendarez-Torres v. United States**, 523 U.S. 224 (1998) (the fact of a prior conviction does not need to be submitted to a jury and found beyond a reasonable doubt), this court determined that Section 9718.4 did not implicate **Alleyne**: "Here, the statute at issue, 42 Pa.C.S.A. § 9718.4(a)(1)(iii), does not provide for any

fact-finding, nor does it make the application of the mandatory minimum sentence contingent on any factual question that has not already been determined." *Pennybaker*, 121 A.3d at 534, citing *Commonwealth v. Aponte*, 855 A.2d 800, 811 (Pa. 2004) (noting that the enhancement statute at issue in that case, relating to prior convictions, was not illegal because application of the statute was not contingent on any fact-finding or any factual question that had not already been determined); *see also Alleyne*, 133 S.Ct. at 2160 n.1 (explicitly noting that *Almendarez-Torres* remains good law, and is a narrow exception to the holding of *Alleyne*).

Recently, however, the Pennsylvania Supreme Court granted allowance of appeal in *Pennybaker*, and vacated this court's decision and remanded to the trial court for resentencing without application of the mandatory minimum sentence in Section 9718.4, citing *Commonwealth v. Hopkins*, 117 A.3d 247 (Pa. 2015) (18 Pa.C.S.A. § 6317, drug-free school zones, is unconstitutional under *Alleyne*), and *Wolfe*. *Commonwealth v. Pennybaker*, 145 A.3d 720 (Pa. 2016) (*per curiam* order filed Aug. 31, 2016).

Appellant did not raise this issue in his PCRA petition or in his brief on appeal. As discussed above, appellant's argument concerning the discretionary aspects of sentencing is misplaced where the Commonwealth invoked the 25-year mandatory minimum sentence under 42 Pa.C.S.A. § 9718.2. Nevertheless, because the issue goes to the legality of his

sentence, which is non-waivable, we will not find waiver on this basis. ***See***

***Commonwealth v. Barnes***, ___ A.3d ___, 2016 WL 7449232 (Pa. Dec. 28,

2016) (an ***Alleyne*** challenge implicates the legality of a sentence for issue

preservation purposes and is not waivable); ***Commonwealth v. Edrington***,

780 A.2d 721, 723 (Pa.Super. 2001), citing ***Commonwealth v. Vasquez***,

744 A.2d 1280 (Pa. 2000) (application of a mandatory sentencing provision

implicates the legality of the sentence, not the discretionary aspects of the

sentence); ***see also Commonwealth v. Fennell***, 105 A.3d 13, 15

(Pa.Super. 2014), ***appeal denied***, 121 A.3d 494 (Pa. 2015), citing

***Commonwealth v. Lawrence***, 99 A.3d 116, 123 (Pa.Super. 2014) ("issues

pertaining to ***Alleyne*** go directly to the legality of the sentence");

***Commonwealth v. Miller***, 102 A.3d 988, 995 (Pa.Super. 2014) ("this Court

is endowed with the ability to consider an issue of illegality of sentence

***sua sponte***"), quoting ***Commonwealth v. Orellana***, 86 A.3d 877, 883 n.7

(Pa.Super. 2014) (citation omitted).

Moreover, retroactivity is not an impediment here where not only was

appellant's original sentence of May 1, 2014, imposed after ***Alleyne*** was

decided and appellant filed a timely PCRA petition, but he was then

resentenced on December 10, 2015, and the trial court imposed the same

25-year mandatory sentence pursuant to 42 Pa.C.S.A. § 9718.2. ***See***

***Commonwealth v. Ruiz***, 131 A.3d 54, 59-60 (Pa.Super. 2015) (a

defendant can raise an ***Alleyne*** challenge in a timely PCRA petition so long

as his judgment of sentence was not yet final when **Alleyne** was decided on June 17, 2013). **Cf. Commonwealth v. Washington**, 142 A.3d 810 (Pa. 2016) (holding that where the defendant's judgment of sentence had already become final <u>before</u> **Alleyne** was decided, **Alleyne** was not a groundbreaking, "watershed" rule of criminal procedure that applied retroactively on collateral review); **Commonwealth v. Riggle**, 119 A.3d 1058 (Pa.Super. 2015) (holding that **Alleyne** did not apply retroactively in a PCRA setting, where Riggle's judgment of sentence became final 15 months <u>before</u> the Supreme Court decided **Alleyne** in June of 2013). In fact, the Commonwealth concedes that remand is appropriate in this case. (**See** Commonwealth's brief at 39 ("Because Judge McDaniel explicitly structured her sentence so as to provide the 25-year minimum required by 42 Pa.C.S.A. § 9718.2, it appears to the Commonwealth that the Court may conclude that this matter must be remanded for resentencing so as to correct an illegal sentence.").) We agree and will follow our supreme court's lead in **Pennybaker** and vacate the judgment of sentence and remand for resentencing without application of a mandatory minimum sentence per 42 Pa.C.S.A. § 9718.2. We affirm the trial court's denial of PCRA relief on the basis of ineffective assistance of counsel, as those claims are without merit.

Order affirmed.  Judgment of sentence vacated.  Remanded for resentencing.  Jurisdiction relinquished.


Shogan, J. joins this Memorandum.

Strassburger, J. files a Concurring Memorandum.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/2017